UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRANSON WILLIAM CARR, an individual,<br>Plaintiff,<br>v.<br>KING COUNTY, a Washington County, et al.,<br>Defendants. | CASE NO. 2:25-cv-00168-TL<br><br>ORDER ON MOTION TO DISMISS |

This matter is before the Court on Defendants' Motion to Dismiss. Dkt. No. 20. Having considered the motion, Plaintiff's response (Dkt. No. 25), Defendants' reply (Dkt. No. 27), and the relevant record, and finding oral argument unnecessary,[1] *see* LCR 7(b)(4), the Court GRANTS Defendants' motion and DISMISSES the First Amended Complaint ("FAC") with limited leave to amend.

//

//

[1] Defendants submitted their motion without oral argument. Dkt. No. 20 at 1. However, Plaintiff requested oral argument. Dkt. No. 25 at 1.

## I. Background

This case is one of many in this District involving pandemic-era State and County mandates that required certain public employees to be vaccinated against COVID-19. In this case, Plaintiff, a King County Sheriff's Deputy, requested an exemption from his employer's vaccine requirement based on religious grounds. Plaintiff's request was denied and, after Plaintiff refused to be vaccinated, he was terminated. The following factual background is drawn from Plaintiff's First Amended Complaint ("FAC") (Dkt. No. 16), the documents incorporated therein, and judicially noticed facts. *See infra* Section III.

### A. The Parties

Plaintiff is Branson Carr, a former Sheriff's Deputy with the King County Sheriff's Office ("KCSO"), an executive agency of the King County government. Dkt. No. 16 ¶¶ 1, 5. Plaintiff joined KCSO in November 2015 and served there until his termination on January 27, 2022. *Id.* ¶¶ 1, 26, 72. During his career at KCSO, Plaintiff earned numerous commendations and awards. *Id.* ¶ 27.

There are four Defendants: King County, Washington ("the County") (*id.* ¶ 6); Dow Constantine, King County Executive between 2009 and 2025 (*id.* ¶ 7); Mitzi Johanknecht, elected Sheriff of King County between 2018 and 2021 (*id.* ¶ 14); and Patricia Cole-Tindall, former interim Sheriff of King County, who was appointed Sheriff in May 2022 (*id.* ¶ 19). The individual Defendants are sued in their individual and official capacities. *Id.* ¶ 25.

In short, Plaintiff alleges that Defendants violated his civil rights under the United States Constitution, the Washington Constitution, and other state laws when they terminated him after he refused to be vaccinated against COVID-19, in contravention of King County's COVID-19 vaccine mandate. *Id.* ¶ 1. Plaintiff's federal constitutional claims are brought pursuant to 42 U.S.C. § 1983. *Id.* These include violations of his right to free exercise of religion under the First

Amendment, equal protection under the Fourteenth Amendment, and procedural and substantive due process under the Fourteenth Amendment. *Id.* ¶¶ 103–135. Plaintiff pleads state-law violations of Article I, Section 11 of the Washington State Constitution, the Washington Law Against Discrimination ("WLAD"), and Washington civil-service law. *Id.* ¶¶ 103–115, 136–163.

## B. Factual Background

### 1. King County's Vaccination Mandate

In August 2021, Washington Governor Jay Inslee issued Proclamation 21-14, which prohibited healthcare providers, most state employees, and educational workers in Washington from working after October 18, 2021, without being vaccinated against COVID-19. *Id.* ¶ 33. On August 10, 2021, Defendant Constantine issued Executive Order ACO-8-27-EO[2] ("the Mandate"), which mirrored Governor Inslee's state mandate by requiring all County executive-branch employees to be fully vaccinated against COVID-19 by October 18, 2021. *Id.* ¶ 34. The Mandate provided for religious and medical exemptions. *Id.* The county-wide Mandate would be implemented by individual King County departments, including KCSO. *Id.* ¶ 35.

The County implemented an "exemption and accommodation process" for employees who maintained medical or religious reasons to refuse the COVID-19 vaccine. *Id.* ¶ 44. As part of this process, the County created and distributed a "COVID-19 Vaccine Religious Accommodation Form." *Id.* ¶ 45. Employees who wanted a religious accommodation could request one by completing the form and returning it to their agency's human resources department. *Id.* The form advised employees who requested an accommodation that their employing agency would "engage in an interactive process" with them, "to determine if [they were] eligible for any potential accommodations." *Id.*

[2] Dow Constantine, King Cnty. Off. of the Exec., Exec. Order No. ACO-8-27-EO *(Order Pursuant to Proclamation of Emergency; COVID-19 vaccination requirements for Executive Branch employees*) (Aug. 10, 2021), https://web.archive.org/web/20251022040606/https://your.kingcounty.gov/dnrp/temp/ACO-8-27-EO-emergency-order-covid-19-vaccination-requirements.pdf [https://perma.cc/WZ5M-WPAB].

Plaintiff alleges that Defendants' implementation of the accommodation process was a sham. "[F]rom the outset," Plaintiff argues, "Defendants . . . intended to refuse to accommodate any exemption requests based on religious belief" and "determined that no accommodation for a religious employee would be granted." *Id.* ¶¶ 47, 50. Plaintiff alleges that "Defendants did not make the same categorical determinations concerning medical accommodation or exemption requests." *Id.* ¶ 51.

**2. Plaintiff's Request for Accommodation**

On September 14, 2021, Plaintiff submitted a written request for an exemption to the Mandate. *Id.* ¶ 53. Plaintiff "explain[ed] that his religious beliefs prohibited him from receiving the vaccine." *Id.* In his request, Plaintiff suggested as an accommodation that "in lieu of the vaccination [he] be allowed to wear a mask and offer [him]self for testing at regular intervals . . . ." *Id.* ¶ 54. Plaintiff offered that his proposed accommodation would "ensure the safety of those [he] work[ed] with and work[ed] for." *Id.* Defendants credited the sincerity of Plaintiff's religious beliefs and began what Defendants referred to as an "interactive process." *Id.* ¶¶ 57–58.

On November 2, 2021, the County asked Plaintiff for additional information about his requested accommodation. *Id.* ¶ 59. Plaintiff proposed "weekly PCR testing, masking, solo shifts, and other protective measures." *Id.*

On January 6, 2022, Defendant Cole-Tindall "informed [Plaintiff] that no accommodation would be provided" and proposed his separation from KCSO. *Id.* ¶ 61. Defendant Cole-Tindall "assured" Plaintiff that such separation would be considered "involuntary" and "non-disciplinary." *Id.* As a public employee facing termination of

//

//

employment, Petitioner was given a *Loudermill* hearing.[3] *Id.* ¶ 63. Plaintiff alleges that Defendants had predetermined the disposition of the hearing, but that he nevertheless "used the hearing to provide [Defendants] with a thorough written explanation of his exemption request and additional proposed accommodations." *Id.* ¶¶ 64–65. Plaintiff also proposed reassignment to the City of Covington, which did not have a vaccine mandate in place for its own employees, but this suggested accommodation "was rejected without explanation." *Id.* ¶¶ 67–68. On January 25, 2022, Plaintiff received a final agency decision regarding his separation, and he was terminated from KCSO on January 27, 2022. *Id.* ¶ 72.

### 3. Plaintiff's Separation

Defendants reported the reason for Plaintiff's termination to the Washington State Employment Security Department ("ESD")[4] as a "violation of a known policy." *Id.* ¶ 76. This "threatened [Plaintiff's] ability to receive unemployment benefits" and impacted his treatment during the benefits approval process, in which he was "humiliat[ed]" and "treated . . . as if he had been terminated for misconduct." *Id.* ¶ 78. Plaintiff attempted to address the report to ESD through an official grievance process with Defendant Cole-Tindall, but the matter was not resolved. *See id.* ¶¶ 79–80. Plaintiff alleges further that "Defendants placed emails in his personnel file under the vague label 'miscellaneous,'" which Plaintiff alleges was an "act of retaliation" that threated his future employment in law enforcement. *Id.* ¶ 82.

### 4. Mutual Aid Agreements

As part of inter-agency "mutual aid" agreements, KCSO "permitted mutual aid from jurisdictions with no vaccine mandate . . . ." *Id.* ¶ 17; *see id.* ¶¶ 40, 52, 85. Under such

---

[3] In a "*Loudermill* hearing," a state or city employee who faces discharge is afforded the opportunity to respond orally to the charges against them. *See Marable v. Nitchman*, 511 F.3d 924, 927 (9th Cir. 2007); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

[4] The Washington State Employment Security Department administers the state's unemployment-benefits program under the federal Social Security Act and Washington Employment Security Act. *See Sterling v. Feek*, 150 F.4th 1235, 1241 (9th Cir. 2025).

agreements, officers from neighboring jurisdictions performed "substantially similar duties" to those Plaintiff had performed in order "to meet [KCSO's] operational needs." *Id.* ¶ 160–161.

### C. Procedural Background

On January 27, 2025, Plaintiff, proceeding pro se, initiated the instant civil action. Dkt. No. 1 (Complaint). On May 19, 2025, Plaintiff, now represented by counsel, filed the FAC as a matter of course. Dkt. No. 16; *see* Fed. R. Civ. P. 15(a). On June 24, 2025, Defendants filed the instant motion to dismiss. Dkt. No. 20. Plaintiff opposed (Dkt. No. 25), and Defendants filed a reply (Dkt. No. 27). [5]

## II. LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. When considering a dismissal pursuant to Rule

[5] The Court regrets the amount of time it has taken to reach this motion. This delay is due to the Court's trial schedule last winter, followed closely by a drastic increase in immigration habeas petition filings. Between January and August 2026, the Western District of Washington received over 1,150 habeas corpus petitions filed by individuals in immigration detention, compared to 51 in the same period in 2025. A petition for writ of habeas corpus is uniquely urgent, as it is "entitled by statute to special, preferential consideration to [e]nsure expeditious hearing and determination." *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (quoting *Ruby v. United States*, 341 F.2d 585, 587 (9th Cir. 1965)). Also, more than 500 more non-prisoner civil cases were filed between January and August 2026 than during the same period in 2025.

12(b)(6), "we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[], the non-moving party." *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)). However, courts are "not 'required to accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

## III. Preliminary Matter

On a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Defendants contend that the Interlocal Cooperative Agreement to Provide Enforcement Mutual Aid and Mobilization Between the Cities of King County and King County ("Mutual Aid Agreement" or "Agreement") is incorporated into the Complaint by reference. Dkt. No. 20 at 12; *see* Dkt. No. 21 at 4–41 (Mutual Aid Agreement). Plaintiff opposes this request, arguing that in seeking to have this document incorporated by reference, Defendants are improperly "attempt[ing] to smuggle in factual disputes." Dkt. No. 25 at 11, 17.

Additionally, as Plaintiff's claims arise entirely from the adoption and implementation of the Mandate, the Court considers whether the Mandate is incorporated by reference into the FAC. Defendants also rely heavily on the legal context provided by King County Executive

Order ACO-8-28-EO, "Order Pursuant to Proclamation of Emergency"[6] (the "Contractor Mandate"), so the Court considers whether to take judicial notice of this document. *See id.* at 15.[7]

**A. Incorporation by Reference**

The doctrine of incorporation by reference allows a court to "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A document may be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

As to the Mutual Aid Agreement, all three requirements for incorporation by reference are satisfied. *See Coto Settlement*, 593 F.3d at 1038. As pointed out by Defendants, the FAC discusses mutual aid agreements and the assistance allegedly received from neighboring jurisdictions through these agreements at least 12 times. Dkt. No. 20 at 12 (citing Dkt. No. 16 ¶¶ 17, 40, 52, 85, 88, 96, 112, 121, 131, 148, 160, 161). It is undisputed that a single document, the Mutual Aid Agreement, provided the legal basis for these "agreements." As to the FAC's reliance on the document, although the FAC never specifically identifies what the mutual aid agreements are, Plaintiff nonetheless relies on the Agreement to form part of the basis of each of his claims. *See id.* ¶¶ 112 (Count I), 121 (Count II), 131 (Count III), 148 (Count IV), 161 (Count V). Indeed, all five counts in the FAC refer to "mutual aid" or "mutual aid agreements," suggesting not only that the document *existed*, but that its terms guided Defendants' conduct.

---

[6] Dow Constantine, King Cnty. Off. of the Exec., Exec. Order No. ACO-8-28-EO, *Order Pursuant to Proclamation of Emergency* (Sept. 11, 2021), https://cdn.kingcounty.gov/-/media/king-county/depts/executive-services/policies /documents/aco-8-28-eo-covid-19-contractor-vaccination.pdf [https://perma.cc/MA85-F9SG].

[7] Defendants also ask the Court to take judicial notice of "basic facts regarding the COVID-19 pandemic" but do not indicate what these facts are. Dkt. No. 20 at 13. Therefore, the Court does not reach this request.

*See, e.g.*, *id.* ¶ 131 (describing Defendants' use of mutual aid officers "consistent with mutual aid agreements"). Plaintiff thus clearly alleges "the contents of the document" in the FAC. As to authenticity, Plaintiff "does not dispute the existence of an agreement" but "objects to Defendants' attempt to have the Court take judicial notice not only of the Agreement's text, but also of Defendants' characterizations of its contents and the inferences they draw from it." Dkt. No. 25 at 11. Still, Plaintiff never asserts that the Agreement itself, as reproduced and provided by Defendants as an exhibit to their Motion (*see* Dkt. No. 21 at 4–41), is inauthentic or is distinct from the "agreements" he repeatedly refers to. Moreover, Plaintiff concedes that "the Court may consider the Agreement to establish the County had *a* policy on the books identifying mutual aid officers as contractors." Dkt. No. 25 at 11. Finally, given Plaintiff's substantial discussion of the Mutual Aid Agreement in the FAC, it is clear that the Agreement is relevant (and Plaintiff does not dispute that it is). In sum, all of the conditions for incorporation by reference have been satisfied.

For the same reasons, although neither Party has affirmatively asked it to, the Court finds that the Mandate is incorporated by reference into the Amended Complaint. Once again, all three criteria are met: the complaint necessarily relies upon the Mandate (from which all claims arise) *and* alleges its contents (*see* Dkt. No. 16 ¶ 34 & n.4), the Mandate's authenticity is not in question, and there is no dispute as to the Mandate's relevance.

Therefore, the Court finds that it may consider the text—and, to be clear, not just the portions of the text Plaintiff approves of—of the Mutual Aid Agreement and the Mandate when adjudicating the instant motion to dismiss, without converting the motion to dismiss into a motion for summary judgment.

//

//

**B. Judicial Notice[8]**

Under Federal Rule of Evidence 201, a court may take judicial notice, either on its own accord or by a party's request, of facts that are not subject to reasonable dispute because they are (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[I]t is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). *See also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (a court "may take judicial notice of court filings and other matters of public record"). This includes documents that are readily verifiable, including "public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies." *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014) (citation modified), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017); *see also Daniels-Hall*, 629 F.3d at 998–99 (taking judicial notice of information published on the websites of two school districts because they were government entities).

In their briefing, Defendants cite to the Contractor Mandate issued by Defendant Constantine, which required all County contractors to be vaccinated against COVID-19 if their work "is required to be performed in person and on site." Dkt. No. 20 at 15 (quoting Contractor Mandate). Although Defendants do not expressly ask the Court to take judicial notice, the Court presumes they are asking the Court to do so given their use of the document in their motion. *See de Banos v. Riverside County Sheriff's Dep't*, No. C10-3519, 2010 WL 11601069, at *3 (C.D.

[8] Only documents that the Court considered for this Order are discussed here.

Cal. Aug. 30, 2010) (presuming a party's non-explicit request for judicial notice); *Mihoubi v. Riverside County Child Servs. DPSS*, No. C24-2472, 2025 WL 3438567, at *2 (C.D. Cal. Nov. 25, 2025) (presuming a party's "expect[ation]" that the court will incorporate certain documents by reference). The Contractor Mandate is a government document that is readily available from the King County government's website. *See supra* n.6. Its authenticity cannot reasonably be questioned. As such, it easily meets the requirement for judicial notice.

Plaintiff does not dispute the authenticity or the accuracy of the Contractor Mandate. *See generally* Dkt. No. 25. Rather, Plaintiff argues that the Court cannot draw inferences from a policy to assume that the policy was carried out as written—e.g., to assume that the contractors were vaccinated or subject to the same requirements as County employees in practice. *Id.* at 11.

The Court agrees with both Parties. The Court finds that it can take judicial notice of the Contractor Mandate. Plaintiff is correct that "[i]n doing so, the Court judicially notices the contents of the document[], not the truth of those contents." *Cross Culture Christian Ctr. v. Newsom*, 445 F. Supp. 3d 758, 765 (E.D. Cal. 2020) (citation modified). The Court will consider the existence of the Contractor Mandate, and the Court will consider that this document set forth a certain policy and the manner in which that policy was supposed to be carried out. This document establishes what certain official written policies were, but it makes no representations as to how and whether those policies were enforced. In other words, the existence of these policies does not negate any well-pleaded allegations that the policies were violated or that exceptions were allowed.

## IV. Discussion

### A. Constitutional Claims

Defendants argue that Plaintiff's federal claims fail on their merits, because qualified immunity bars each claim for damages with respect to the individual Defendants sued in their

personal capacities, and because the government-entity Defendants are not subject to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Court will first discuss the legal framework for qualified immunity, then consider the merits and/or qualified immunity arguments claim by claim, and then discuss *Monell* liability.

**1. Legal Framework for Qualified Immunity**

"Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages' when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cardenas-Ornelas v. Johnson*, 165 F.4th 1234, 1239 (9th Cir. 2026) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants argue that qualified immunity bars Plaintiff's claims for damages against the individual Defendants—Defendants Constantine, Johanknecht, and Cole-Tindall. *See* Dkt. No. 20 at 23. Essentially, the question is whether, at the time of the alleged misconduct, the individual Defendants knew, or should have known, that they were violating Plaintiff's constitutional or statutory rights.

"To overcome qualified immunity, Plaintiff[] must show that [D]efendants (1) violated a federal statutory or constitutional right and (2) the unlawfulness of their conduct was clearly established at the time." *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023) (citation modified). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation modified). "To determine whether a constitutional right has been 'clearly established' for qualified immunity purposes, [the Court] must 'survey the legal landscape and examine those cases that are most like the instant case.'" *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 970 (9th Cir. 2010) (quoting *Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir. 1996)). For a right to have been "clearly established," "existing precedent must

have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The high standard for clearly established rights means a plaintiff "must . . . identify precedent that holds 'certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand.'" *Orn v. City of Tacoma*, 949 F.3d 1167, 1178 (9th Cir. 2020) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Further, that right must have been established "at the time of the alleged violation." *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998).

"The Supreme Court has cautioned against defining 'clearly established right' with excessive generality." *Bennett v. King County*, C24-2065, 2026 WL 41131, at *2 (W.D. Wash. Jan. 7, 2026) (citing *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)); *see Mullenix*, 577 U.S. at 12 ("The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (citation modified)). In *C.F. ex rel. Farnan v. Capistrano Unified School District*, 654 F.3d 975, 987 (9th Cir. 2011), the Ninth Circuit provided examples of what level of specificity suffices when demonstrating the existence of a clearly established right. Particularity is paramount. In a Fourth Amendment context, for example, the challenged conduct was framed as "shoot[ing] a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). In another case, the court had examined whether "qualified immunity was warranted where there 'was no reported case in which a person in the post-September 11 environment satirically proclaimed himself or herself to be a terrorist in possession of weapons of mass destruction.'" *Id.* (quoting *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008)). Considering the specificity required by these precedents, the *C.F. ex rel Farlan* court

rejected the plaintiff's contention that "it has been clearly established for many years that the government must remain neutral with regard to religion, and it may not show its disapproval of religion." *Id.* The court reasoned that "this overbroad proposition, 'cast at a high level of generality,'" did not fairly warn the defendant of whether his specific conduct violated the Constitution and was "just the sort of sweeping statement of the law that is inappropriate for assessing whether qualified immunity applies." *Id.* at 987 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). Like the right to neutral treatment of religion, any right that is framed as little more than a recitation of the cause of action—such as the right to religious accommodation, the right to equal protection, the right to civil-service protection, or the right "to be free from retaliation based on sincerely held religious beliefs" (Dkt. No. 16 ¶ 92)—will not be specific enough to allow the Court to find that qualified immunity does not exist.

The Court "may begin the qualified immunity analysis by considering whether there is a violation of clearly established law without determining whether a constitutional violation occurred." *Krainski*, 616 F.3d at 969 (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). The analysis may also proceed in the opposite direction. *Pearson*, 555 U.S. at 236. Of course, if the Court determines that a pleading does not state a claim that any constitutional violation has occurred, the claim fails on its merits and the question of qualified immunity is moot.

As a general matter, Plaintiff asserts that it is inappropriate for the Court to rule on qualified immunity at this procedural posture, arguing, "While courts *may* consider qualified immunity at the pleading stage, the Ninth Circuit has cautioned that '[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making.'" Dkt. No. 25 at 22 (alteration in original) (quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)). This argument is unpersuasive. Plaintiff does not identify what these "special problems" might be, and he does not explain whether this Court, in this case, necessarily

encounters them when ruling on the instant motion. A number of recent COVID-19 vaccine decisions in this District have adjudicated questions of qualified immunity at this procedural posture.[9] *See*, *e.g.*, *Bennett*, 2026 WL 41131, at *2; *Colombo v. Wash. Dep't of Nat. Res.*, No. C24-5887, 2025 WL 1434903, at *3–4 (W.D. Wash. May 19, 2025); *Hanson v. Ferguson*, No. C24-5989, 2025 WL 1434740, at *3–4 (W.D. Wash. May 19, 2025); *Gray v. Wash. State Dep't of Transp.*, No. C23-5418, 2023 WL 6622232, at *3–4 (W.D. Wash. Oct. 11, 2023), *aff'd* No. 23-3278, 2024 WL 5001484 (9th Cir. Dec. 6, 2024). Here, the Court will address Defendants' qualified immunity defense as necessary where it does not first determine that no constitutional violation has been or can be pleaded.

**2. Individual Claims**

**a. Free Exercise Claim**

Plaintiff's first cause of action alleges a violation of his right to free exercise of religion under the First Amendment of the U.S. Constitution.[10] The Free Exercise Clause "protect[s] religious observers against unequal treatment" based on their "religious status" by barring laws "prohibiting the free exercise" of religion. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 458 (2017) (alteration in original) (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533 (1993)); *see* U.S. Const. amend. I. A law that burdens religion and is not neutral or generally applicable must survive strict scrutiny. That is, the burden on religion "must be justified by a compelling governmental interest and must be narrowly tailored to

---

[9] In *Keates*, the Ninth Circuit described the "special problems" to which Plaintiff refers as the tension between the *Twombly–Iqbal* pleading requirements, which do not require a plaintiff to *prove* anything, and the "low bar" that entitles a defendant to qualified immunity, "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Keates*, 883 F.3d at 1234–35. A court addresses the "problem" by "consider[ing] whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware 'in light of the specific context of the case.'" *Id.* at 1235 (quoting *Mullenix*, 577 U.S. at 12).

[10] Plaintiff's "Count I" also encompasses a free exercise of religion claim arising under the Washington Constitution; however, that is a separate claim for relief and is discussed with other state law claims *infra* Section IV.C.

advance that interest." *Lukumi*, 508 U.S. at 531–32. However, "a neutral law of general application need not be supported by a compelling government interest even when the law has the incidental effect of burdening a particular religious practice. Such laws need only survive rational basis review." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075–76 (9th Cir. 2015) (citation modified). Accordingly, the right to freely exercise one's religion "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* at 1075 (citation modified).

In evaluating a Free Exercise claim, the "initial inquiry" is therefore "whether a challenged law is neutral [and] generally applicable." *Moriarty v. Port of Seattle*, No. C23-1209, 2024 WL 4290279, at *4 (W.D. Wash. Sept. 25, 2024) (citation modified). If it is both, the law must survive only rational-basis review. Otherwise, strict scrutiny applies. *Lukumi*, 508 U.S. at 531. "Neutrality and general applicability are interrelated, and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Id.*

At least one court in this District has found that the King County vaccine mandate, *on its face*, was "unquestionably neutral and generally applicable." *Eshom v. King County*, 812 F. Supp. 3d 1190, 1204 (W.D. Wash. 2025), *appeal docketed*, No. 25-7877 (9th Cir. Dec. 16, 2025).[11] Plaintiff concedes that "all facial constitutional challenges to the Mandate" have been dismissed by courts (*id.* ¶ 13) and describes his free exercise claim in his briefing as "Carr's as-

---

[11] Other courts have consistently and uniformly found similar mandates in this State to have been neutral and generally applicable. *See, e.g.*, *Bacon v. Woodward*, No. 22-35611, 2024 WL 3041850, at *1 (9th Cir. June 18, 2024) (Washington Governor's statewide proclamation for certain state employees); *Sloan v. Port of Seattle*, No. C25-20, 2025 WL 2799549, at *11 (W.D. Wash. Sept. 30, 2025) (mandate for public municipal corporation); *Rosa v. City of Issaquah*, No. C24-1673, 2025 WL 2733672, at *22 (W.D. Wash. Sept. 25, 2025) (mandate for city employees); *Shirley v. Wash. State Dep't of Fish & Wildlife*, No. C23-5077, 2025 WL 1360872, at *5 (W.D. Wash. May 9, 2025) (holding that a vaccine mandate is "a generally applicable requirement"); *Rolovich v. Wash. State Univ.*, No. C22-319, 2023 WL 3733894, at *6 (E.D. Wash. May 30, 2023) ("This Court and many others around the country have consistently found COVID-19 vaccine mandates for state employees are facially neutral and generally applicable . . . .") (collecting cases).

applied challenge" (*see* Dkt. No. 25 at 9–10). Therefore, the Court will analyze this claim as a challenge to the constitutionality of the Mandate not on its face, but as it was carried out in relation to Plaintiff's employment within KCSO. Plaintiff alleges that (as applied to him) the policy does not pass either strict scrutiny or intermediate scrutiny. Dkt. No. 16 ¶¶ 113–114.

**(1) The Mandate Was Neutral and Generally Applicable**

Plaintiff alleges that, even if Defendant's vaccine mandate was neutral and generally applicable on its face, it was not neutral and/or generally applicable as applied by Defendants. *See* Dkt. No. 16 ¶¶ 109–111. A policy that is neutral on its face can nonetheless fail this test "if a religious exercise is otherwise its object." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022) (citation modified). "A government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.'" *Id.* at 526 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021)). However, explicit, categorical exemptions for religious objectors, with accommodations to be considered based on non-discretionary criteria, are not "individualized exemptions" within the meaning of *Fulton*. *Nilsen v. Univ. of Wash. Med. Ctr.*, No. C23-1498, 2024 WL 4723233, at *9 (W.D. Wash. Nov. 8, 2024) (citing *Fulton*, 593 U.S. at 533). Plaintiff does not allege any facts that support a finding that the Mandate was not neutral as applied. Although he alleges that "[t]he Mandate was not intended to reduce transmission of COVID-19," (Dkt. No. 16 ¶ 42) he also alleges that Defendants' intention, "in reality" was "to use employees as an example of compliance with Defendants' public policy goals of increased vaccination rates" (*id.* ¶ 39). In other words, the object of the Mandate was *not* religious exercise.

As for general applicability, Plaintiff alleges that Defendants violated his right to Free Exercise of religion under the First Amendment with a "sham, discretionary evaluation process"

and a "policy of categorically excluding religious people from accommodations for the Mandate's requirement." Dkt. No. 16 ¶ 108. He alleges that "from the outset, Defendants determined that no accommodation for a religious employee would be granted." *Id.* ¶ 50; *accord id.* ¶¶ 47, 48, 49. He alleges that the exemption-and-accommodation process "gave broad discretion to an evaluator and was not neutral or generally applicable" (*id.* ¶ 109) and "intentionally treated Mr. Carr's religious accommodation request differently than medical exemption requests" and "also treated Mr. Carr's religious accommodation request differently than it did officials engaged under mutual aid agreements with neighboring jurisdictions" (*id.* ¶ 112).

The logic of Plaintiff's general-applicability allegations is fraught with contradictions. For one thing, it is unclear how the policy could both be "categorical" and allow for "broad discretion." For another, Plaintiff's allegations that Defendants determined *all* religious accommodation requests would be denied appears inconsistent with language elsewhere in the complaint that suggests denials had some relationship to job duties or roles:

- "On information and belief, this outcome was predetermined because Defendants personally directed that all requests for religious accommodations be denied, *at least as to any employee with public-facing employment duties*." *Id.* ¶ 70 (emphasis added).

- "On information and belief, Defendant Johanknecht directed subordinates to uniformly deny religious accommodation requests from *commissioned personnel*, including Mr. Carr." *Id.* ¶ 16 (emphasis added).

- "King County categorically denied religious accommodations, *at least as to public-facing employees*, within King County." *Id.* ¶ 86 (emphasis added).

The Court is not required to accept conclusory statements that are inconsistent with the facts Plaintiff has alleged, and the Complaint does not include well-pleaded allegations that there was an unwritten policy of denying all religious accommodation requests. *See, e.g.*, *Hobbs v. Oppenheimer*, No. C22-290, 2022 WL 16855194, at *4 (D. Ariz. Nov. 10, 2022) ("Because the

Court must accept all facts as true but need not accept all facts as plausibly stating a claim, the Court concludes that it may view inconsistent facts as less capable than consistent facts of plausibly stating a claim.”). Additionally, the facts in the FAC do not sufficiently allege that similar secular conduct was treated more favorably. The FAC alleges that the Mandate, as applied, “did not require similar [uniform] denials of medical accommodations” (Dkt. No. 16 ¶ 16; *accord id.* ¶ 51), and that the policy therefore “intentionally treated Mr. Carr’s religious accommodation request differently than medical exemption requests” (*id.* ¶ 112). But this conclusory statement is insufficient in light of the absence of any allegation that even a single medical exemption was actually granted or even requested, much less any such request involving “employees with public-facing employment duties” or “commissioned personnel.” Similarly, Plaintiff does not allege that any employee with a medical exemption was allowed to remain unvaccinated in a role like Plaintiff’s with accommodations that Plaintiff was denied. Even if medical accommodations were functionally available while religious accommodations were not, this alone does not undermine the Mandate’s general applicability, because, as Defendants point out, the Ninth Circuit has “held that the existence of medical exemptions in a school district’s vaccination mandate that allowed for no religious exemptions did ‘not raise[] a serious question as to whether the mandate is generally applicable.’” Dkt. No. 20 at 19 (alteration in original) (quoting *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021)); *see also Spivack v. City of Philadelphia*, 109 F.4th 158, 176 (3d Cir. 2024) (“Unlike a religious exemption, a medical exemption furthers the [government’s] interest in keeping its employees safe and healthy by allowing employees for whom the COVID-19 vaccine would cause death or illness to abstain from vaccination.” (collecting cases)).

Plaintiff counters that the Ninth Circuit “has already rejected the attempt to rely on *Doe v. San Diego Unified School District* to justify” allowing medical exemptions while denying

religious ones (Dkt. No. 25 at 15 (citing *Bacon v. Woodward*, 104 F.4th 744 (9th Cir. 2024) (hereinafter *"Bacon III*")), but this is a blatant mischaracterization of the authority he cites. In *Bacon III*, the court explained that the reasoning of *Doe* could not justify granting vaccine exemptions based on a *non-medical* secular criterion while denying religious accommodations, but allowed that "[i]f the [plaintiffs'] Free Exercise claim rested on the existence of medical exemptions, *Doe* might pose an obstacle." *Bacon III*, 104 F.4th at 752. *Doe* does pose an obstacle here, and Plaintiff's attempts to distinguish it are unavailing.

Finally, Plaintiff alleges that Defendants "treated Mr. Carr's religious accommodation request differently than it did officials engaged under mutual aid agreements with neighboring jurisdictions" (Dkt. No. 16 ¶ 112), a clear attempt to liken his allegations to those in *Bacon III*. In that opinion, the Ninth Circuit found a plausible as-applied Free Exercise claim in a vaccine-mandate case that also involved a mutual-aid agreement. *See generally* 104 F.4th 744 (cited by Dkt. No. 25 at 10, 24). The complaint in *Bacon*, brought by unvaccinated firefighters who had been terminated from employment in Spokane,

> allege[d] that, once unvaccinated firefighters were terminated, Spokane would turn to firefighters from neighboring fire departments to fill the gaps left by the firefighters' departure even though those fire departments granted religious accommodations to their employees. In other words, Spokane implemented a vaccine policy from which it exempted certain firefighters based on a secular criterion—being a member of a neighboring department—while holding firefighters who objected to vaccination on purely religious grounds to a higher standard.

*Bacon III*, 104 F.4th at 751. In light of these allegations, the *Bacon* court found that the plaintiff firefighters had plausibly pleaded that "Spokane implemented a vaccine policy from which it exempted certain firefighters based on a secular criterion—being a member of a neighboring department—while holding firefighters who objected to vaccination on purely religious grounds to a higher standard." *Id.* at 751.

The same finding cannot be made here, because the allegations in the FAC, and the undisputed or undisputable facts underpinning them, are easily distinguishable from the facts in *Bacon*. Critically, Plaintiff does not allege that his role was filled after his termination by mutual-aid personnel, or that *any* mutual aid personnel were brought in to perform full-time duties similar to his. The Mutual Aid Agreement only provided for employees of other jurisdictions to provide their services "on occasion" (Dkt. No. 21 at 5), and Petitioner does not allege that the agreement was not carried out as written. Even if mutual-aid personnel were similarly situated to Petitioner, the policies incorporated by reference in the FAC make it clear that any mutual-aid personnel who, like Plaintiff, were required to work on site and in person were not subject to a more favorable policy related to COVID-19 vaccination. As Defendants point out (see Dkt. No. 20 at 20), the Mutual Aid Agreement provided that all mutual-aid personnel would "act[] as independent contractors." Dkt. No. 21 at 6. Therefore, any mutual-aid personnel working in King County "would have been subject to the County's vaccine mandate for *contractors*." Dkt. No. 20 at 20. Under the Contractor Mandate, all covered workers were required to be vaccinated if performing "work that is required to be performed in person and on site." Contractor Mandate at 2. Plaintiff's allegations rely on the premise that "King County continued to rely on mutual aid from agencies and jurisdictions with no vaccine mandate" (Dkt. No. 16 ¶ 85) who were "not subject to the Mandate" (*id.* ¶ 160). Given that King County itself required these individuals to be vaccinated under the Contractor Mandate, this is a distinction without a difference: "mutual aid personnel were subject to a vaccine mandate and were *not* treated differently than [Plaintiff]." Dkt. No. 20 at 20.

In his response, Plaintiff argues that the question of whether "all mutual aid officers were uniformly subject to the same vaccination rules" as Plaintiff is a "core factual dispute" that "cannot be resolved" at this stage. Dkt. No. 25 at 17. There are two problems with this position.

First, Plaintiff poses the wrong question. The Court need not consider "all mutual aid officers," but only those, if any, who were similarly situated to Plaintiff—that is, performing the same work on site, in person, and full time. Second, there is no apparent factual dispute to resolve. It cannot be reasonably disputed that the applicable policies required such individuals (if any existed) to be fully vaccinated. There is also no factual dispute about whether the requirements of the Agreement and the Contractor Mandate were enforced as written, because Plaintiff does not allege that they were not. To the contrary, the FAC states that "mutual aid officers performed substantially similar duties *without any requirement* to be vaccinated." Dkt. No. 16 ¶ 160. That allegation is simply untrue. The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," such as the Mutual Aid Agreement, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citation modified), or judicially noticeable facts, such as the existence of the Contractor Mandate, *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* (quoting *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001)). In light of the Contractor Mandate's requirement of vaccination for mutual aid personnel, Plaintiff's conclusory statements that "many of [them] were unvaccinated" (Dkt. No. 16 ¶ 160) and that "outside personnel who *may* not have received the COVID-19 vaccine . . . served in positions similar to or the equivalent of Mr. Carr's position" (*id.* ¶ 85 (emphasis added)) appear to be pure, unwarranted speculation, especially where these statements are contingent on either a violation of or a county-approved exception to the Contractor Mandate—neither of which the FAC alleges, and neither of which it is evident Plaintiff has any factual basis to allege.

Accordingly, the Court finds that Defendant's vaccination policy was neutral and generally applicable, both facially and as applied. Therefore, the Court considers whether Plaintiff has plausibly stated a claim that the Mandate, as applied, fails rational-basis review.

**(2) The Mandate Survives Rational-Basis Review**

Because Defendant's vaccination policy was both facially neutral and generally applicable, the incidental burden it imposed on Plaintiff's religious exercise is subject to rational-basis review. *See Stormans*, 794 F.3d at 1084 (citing *Guam v. Guerrero*, 290 F.3d 1210, 1215 (9th Cir. 2002)). "Under rational basis review, we must uphold [policies] if they are rationally related to a legitimate governmental purpose." *Id.* (citing *Gadda v. State Bar of Cal.*, 511 F.3d 933, 938 (9th Cir. 2007)). Plaintiff has "the burden to negat[e] every conceivable basis which might support" the policy. *Id.* (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

Plaintiff—who argues that strict scrutiny applies—provides no argument that the vaccine requirement fails rational-basis review. *See generally* Dkt. No. 25. He does not contest that the intent to safeguard individuals from COVID-19 is a legitimate interest—by now a well-established fact of law.[12] *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest . . . ."); *Pilz v. Inslee*, No. C22-35508, 2023 WL 8866565, at *2 (9th Cir. Dec. 22, 2023) (same); *Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) ("There is a legitimate state interest in preventing the spread of COVID-19, a deadly contagious disease.");

[12] The FAC does allege that "[t]he Mandate was not intended to reduce transmission of COVID-19" (Dkt. No. 16 ¶ 42), but this conclusory statement conflicts directly with the Mandate (which is incorporated into the FAC by reference), is an unexplained and facially unreasonable inference, and appears abandoned by Plaintiff in his response brief. *See* Dkt. No. 25 at 16 ("[T]he Mandate identifies multiple, broad interests . . . includ[ing] the interest to 'promote "widespread vaccination,"' 'protect everyone, including persons who cannot be vaccinated,' and 'protect our health care system.'" (quoting Dkt. No. 20 at 8–9). The Court therefore does not treat this conclusion as a statement of fact it must accept as true.

*Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 707 (C.D. Cal. 2022) ("[T]here is no question that the city's interest in preventing the spread of COVID-19 is not merely legitimate, it is 'unquestionably . . . compelling.'" (quoting *Roman Catholic Diocese*, 592 U.S. at 18)); *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1158 (D. Or. 2021) (finding that school board had legitimate interest in preventing spread of COVID-19); *Altman v. County of Santa Clara*, 464 F. Supp. 3d 1106, 1128 (N.D. Cal. 2020) ("Plaintiffs concede that 'Defendants have a legitimate interest in reducing the population's exposure to COVID-19,' a pandemic that is 'serious in nature.'"); *see also Does 1–6 v. Mills*, 16 F.4th 20, 32 (1st Cir. 2021) ("Few interests are more compelling than protecting public health against a deadly virus."); *Norris v. Stanley*, 73 F.4th 431, 436 (6th Cir. 2023) ("Public health and safety easily fall within the state's legitimate interests.").

Nor does Plaintiff deny that the vaccination policy is rationally related to Defendant's interest in protecting its employees and the public from the transmission of COVID-19. *See generally*, Dkt. No. 25. Like other policies that have survived rational-basis review, the Mandate was intended to slow the spread of COVID-19 and to "protect everyone, including persons who cannot be vaccinated for medical reasons, youth who are not eligible to receive a vaccine, immunocompromised individuals, and vulnerable persons including persons in health care facilities, and other congregate care facilities from COVID-19 infections[.]" Mandate at 1. "Stemming the spread of COVID–19 is unquestionably a compelling interest . . . ." *Roman Catholic Diocese*, 592 U.S. at 18. "Courts in this District and beyond have overwhelmingly found that requiring employees to be vaccinated against COVID-19 is rationally related to interest in safeguarding employee and public health and preventing the spread of COVID-19." *Rosa v. City of Issaquah*, No. C24-1673, 2025 WL 2733672, at *26 (W.D. Wash. Sept. 25, 2025) (citation modified) (collecting cases). Plaintiff's complaint makes a conclusory allegation (in

support of a different claim) that "treat[ing] Mr. Carr's religious accommodation differently that medical exemption requests [or] officials engaged under mutual aid agreements with neighboring jurisdictions . . . was not . . . rationally related to any legitimate governmental objective," Dkt. No. 16 ¶¶ 112–113, but he does not explain this assertion (and, again, he does not plausibly plead that employees seeking medical exemptions or mutual aid providers were similarly situated to him). Plaintiff's failure to demonstrate that the application of the policy undermined the relationship between the Mandate and its goals further distinguishes his allegations from the ones considered in *Bacon III,* where the court found it significant that by exempting out-of-department firefighters from any vaccine requirement, "Spokane undermined its interest [in protecting health] and destroyed any claim of general applicability." 104 F.4th at 752. Therefore, the Court is convinced by Defendants' unrebutted arguments that the Mandate, facially and as applied, is rationally related to a legitimate government interest and therefore survives rational basis review.

* * *

For the foregoing reasons, the Court finds that Plaintiff has not plausibly pleaded that the Mandate, as applied to him, violated his First Amendment right to free exercise of religion. The Court allows that Plaintiff may be able to supplement his deficient allegations with new facts that align his case more closely with *Bacon III*, and Plaintiff will be granted leave to amend. Even so, the Court finds that amendment of Plaintiff's Free Exercise claim against Defendants in their *individual* capacities would be futile because they would be protected by qualified immunity. Around the country, "district courts have consistently found that officials are entitled to qualified immunity in challenges to public health orders and vaccine mandates passed during the midst of the global COVID-19 pandemic." *Bennett*, 2026 WL 41131, at *2. Plaintiff's arguments that this Court should break with its peers in this regard is unconvincing, especially as the "clearly established" rights he identifies in his briefing—(1) "[t]he First Amendment right to religious

accommodation in the face of discretionary and selectively enforced policies"; (2) "[t]he right to equal protection from arbitrary and discriminatory government action"; (3) "[t]he right of a public employee with civil service protections to meaningful pre-termination process"; and (4) "[t]he prohibition on retaliation for asserting constitutional rights and discriminatory treatment" (Dkt. No. 25 at 23)—are far too generalized to defeat qualified immunity. Moreover, Plaintiff does not identify a single case with analogous facts that might have "clearly established" the alleged conduct as unconstitutional before it occurred. Even *Bacon III*—which might arguably provide a precedent from which Plaintiff could derive a clearly established right for the purposes of defeating qualified immunity—was decided in 2024, more than two years after the complained-of conduct in this case. Defendants could not have been on notice that its holding highlighted potential gray areas in the general applicability of a municipal vaccine mandate (much less that it clearly established any particular right as constitutionally protected). The Court therefore finds that amendment of this claim as against the individual defendants in their individual capacities would be futile, and amendment will only be permitted against Defendant King County and Defendants Constantine, Johanknecht, and Cole-Tindall in their official capacities.

**b. Equal Protection Claim**

Plaintiff's second cause of action alleges that "Defendants intentionally subjected Mr. Carr to differential treatment compared to similarly situated individuals—for example, individuals with medical exemption requests or officials engaged under mutual aid agreements with neighboring jurisdictions. This differential treatment had no rational basis and was based on Mr. Carr's religious beliefs." Dkt. No. 16 ¶ 121.

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state a § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

Defendants argue that Plaintiff's equal protection claim should be dismissed because it is subsumed by his First Amendment claim. Dkt. No. 20 at 24 (citing *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001)). The Court is unconvinced: there is no rule that a plaintiff cannot bring both a Free Exercise claim and an equal protection claim grounded in religious discrimination, and the requirements for stating such a claim are not identical. While the Court in *Orin* may have found that the complaint before it drew no distinction between its First and Fourteenth Amendment claims, the Court does not find so here.

The Court does agree with Defendants, however, that Plaintiff "fails to plead specific, nonconclusory factual allegations establishing any . . . improper motive by any Individual Defendant." *Id.* (citation modified). The Court additionally finds that the FAC does not even identify Plaintiff's asserted "classification of groups," which is the "first step in equal protection analysis[.]" *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995)). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Id.* In the FAC, Plaintiff does not identify any classification of groups but asserts only that he himself, "based on his religious beliefs," was "subjected . . . to differential treatment compared to similarly situated individuals—for example, individuals with medical

exemption requests or officials engaged under mutual aid agreements with neighboring jurisdictions." Dkt. No. 16 ¶ 121. Reading between the lines, his pleading suggests that the class at issue may be "Christians whose sincerely held religious beliefs prevent [them] from receiving the COVID-19 vaccine" (*id.* ¶ 139) or "religious employee[s]" (*id.* ¶ 50). In his brief opposing dismissal, Plaintiff attempts for the first time to explicitly define his purported protected class, this time describing it as "employees with religious objections" (Dkt. No. 25 at 24); however, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Olympic Tug & Barge, Inc. v. Lovel Briere LLC*, 668 F. Supp. 3d 1165, 1177 (W.D. Wash. 2023) (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014)). Even if Plaintiff had pleaded such a classification of groups, however, he has not pleaded that similarly situated people outside his class were treated more favorably than those within it. Plaintiff does not allege that King County employees who did *not* hold religious beliefs against vaccination were permitted to remain unvaccinated while working in similar roles, or that employees without religious objections to vaccination were given accommodations that he was denied. Finally, the FAC does not successfully plead facts establishing that mutual aid personnel or individuals seeking medical exemptions from vaccination were similarly situated to members of Plaintiff's class. *See supra* Section IV.A.2.a.(1); *see also Thornton*, 425 F.3d at 1166 ("The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified.")

Therefore, the Court finds that Plaintiff does not state a claim for the violation of the Equal Protection Clause of the Fourteenth Amendment. This claim will therefore be dismissed for failure to state a claim. The Court allows that Plaintiff may be able to remedy these deficiencies by amendment, and Plaintiff will be given leave to amend his complaint and replead this claim against Defendant King County and against Defendants Constantine, Johanknecht, and

Cole-Tindall in their official capacities. For the reasons discussed *supra* Section VI.2.a, however, qualified immunity shields Defendants Constantine, Johanknecht, and Cole-Tindall from liability in their individual capacities and amendment to overcome qualified immunity would be futile.

**c. Due Process—Fourteenth Amendment**

Plaintiff next alleges a violation of his substantive and procedural due process rights under the Fourteenth Amendment. Dkt. No. 16 ¶¶ 125–135. Because substantive and procedural due process claims are distinct, the Court will address each claim in turn.

**(1) Procedural Due Process**

This aspect of Plaintiff's claim revolves around what he alleges was a defective *Loudermill* hearing. *See id.* ¶ 130. The Ninth Circuit has repeatedly held that when a policy impacting property rights—such as the right to "continued employment in a state job"—is generally applicable, "no procedural due process is required beyond the proper promulgation of the new substantive rule." *Bacon II*, 2024 WL 3041850, at *2 (citing *Rea v. Matteucci*, 121 F.3d 483, 484–85 (9th Cir. 1997)). "Numerous courts in this District have reached the same conclusion when considering vaccine mandates for public employees." *Moriarty v. Port of Seattle*, No. C23-1209, 2025 WL 3295346, at *19 (W.D. Wash. Nov. 26, 2025) (collecting cases). The *Bacon* Court, in a separate opinion released concurrently with *Bacon III*, rejected the plaintiff firefighters' procedural due process claims, which were premised on an allegedly "overly stringent, 'sham' approach to accommodations," because the proper promulgation of a generally applicable vaccine mandate is all the process they were due. *Bacon II*, 2024 WL 3041850, at *2. For this analysis, what matters is whether the challenged policy is generally applicable on its face, not as applied. *See generally id.*

As Plaintiff does not appear to dispute, King County's vaccine mandate was generally applicable on its face, "as it facially applies to all relevant employees unless they can show that

they are legally entitled to an exemption." *Eshom*, 812 F. Supp. 3d at 1204 (quoting *Bacon II*, 2024 WL 3041850, at *1). Plaintiff does not allege that the policy was not "properly promulgated." *See generally* Dkt. No. 16. Accordingly, this Court "once again joins other district courts around the country that have rejected procedural due process challenges to employer-issued vaccine mandates during the COVID-19 pandemic, finding employees are not entitled to greater service than what is provided by enactment of the mandates themselves." *Moriarty*, 2025 WL 3295346, at *20.

To the extent that notice and hearing under *Loudermill* might have been required in the application of the Mandate to Plaintiff's individual case, Plaintiff has not presented evidence that his rights were violated. *See Bacon II*, 2024 WL 3041850, at *2. It is undisputed that Plaintiff was given notice of the Mandate and that he participated in a *Loudermill* hearing. That Plaintiff "did not like the substance of" Defendants' ultimate decision not to accommodate him "is not a procedural due process objection." *Id.* Therefore, Plaintiff does not and cannot state a claim that his procedural due process rights were violated in the manner of his termination. This claim will be dismissed for failure to state a claim. Because the allegations in the FAC make it clear that Plaintiff was provided all the process he was due (and likely more), the Court finds that allowing Plaintiff leave to amend this claim would be futile.

Because Plaintiff has not pleaded (and cannot plead) that his procedural due process rights were violated, the Individual Defendants' qualified immunity defense is moot with regard to this claim, and the Court does not reach it.

**(2) Substantive Due Process**

The Supreme Court has applied two different tests to substantive due process claims arising under Section 1983. The correct standard depends on whether the challenge targets legislative action or executive action. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846

(1998) ("[C]riteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue."). Where a challenged action is legislative in nature, the critical question is whether the action burdens a fundamental right, *see Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 759 (9th Cir. 2021),[13] while challenged executive actions are subject to the "shocks-the-conscience test," *Lewis*, 523 U.S. at 834. The Parties do not discuss whether the challenged actions here should be considered executive or legislative, but discuss only whether the alleged conduct "shocks the conscience." Under either standard, however, Plaintiff fails to state a claim.

Substantive due process challenges to executive action brought under Section 1983 and the Fourteenth Amendment must allege misconduct that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. Here, in a single sentence, Plaintiff claims that "Defendants' creation and implementation of a policy to categorically refuse to consider any religious accommodations—combined with their immediate termination of employees who sought such exemptions—was so arbitrary, punitive, and indifferent to constitutional norms as to shock the conscience."[14] Dkt. No. 16 ¶ 134.

The Court agrees with Defendants that "[t]he conduct alleged in the FAC comes nowhere near the type of conducts courts have found to 'shock the conscience and offend the community's sense of fair play and decency.'" Dkt. No. 20 at 26 (quoting *Marsh v. County. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012)). Additionally, while Plaintiff refers in his response to his "protected interest in continued employment" (Dkt. No. 25 at 25), "there is no

[13] Legislative actions that do not burden a fundamental right "must only be rationally related to legitimate government interests." *Slidewaters*, 4 F.4th at 759 (citation modified).

[14] As a point of clarification, the Court notes that the framing of the alleged policy as an "immediate termination of employees who sought [religious] exemptions" is inconsistent with Plaintiff's factual allegations. Rather, Plaintiff alleges that over four months passed between his accommodation request and his termination. *See* Dkt. No. 16 ¶¶ 53, 72. His allegations also compel the conclusion that he was terminated for remaining unvaccinated in violation of the Mandate, not for making a religious exemption request. *See id.* ¶¶ 64, 76.

fundamental right to government employment[.]" *Canfield v. Sullivan*, 774 F.2d 1466, 1469 (9th Cir. 1985).

Courts that have applied either test to vaccine mandates have consistently concluded that they do not violate substantive due process. *See, e.g.*, *Kheriaty v. Regents of the Univ. of Cal.*, No. 22-55001, 2022 WL 17175070, at *1 (9th Cir. Nov. 23, 2022) (applying *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), and finding that COVID-19 vaccination requirement did not violate fundamental right and survived rational-basis review)); *Norris v. Stanley*, 73 F.4th 431, 436–37 (6th Cir. 2023) (same); *Klaassen v. Trs. of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (same); *Bauer v. Summey*, 568 F. Supp. 3d 573, 591 (D.S.C. 2021) (vaccine mandate did not shock the conscience); *Guettlein v. U.S. Merchant Marine Acad.*, 577 F. Supp. 3d 96, 105 (E.D.N.Y. 2021) (mandate does not shock the conscience). In his response, Plaintiff does not acknowledge the extensive body of adverse case law and makes no attempt to distinguish his complaint from the binding and persuasive authority Defendants cite. The Court finds that Plaintiff does not, and cannot, state a claim for the violation of his substantive due process rights. This claim will therefore be dismissed for failure to state a claim. The Court further finds amendment would be futile, and no amendment will be allowed.

Because Plaintiff has not pleaded (and cannot plead) that his substantive due process rights were violated, the Individual Defendants' qualified immunity defense is moot with regard to this claim, and the Court does not reach it.

**3. Municipal Liability**

Plaintiff names King County as a Defendant in all his claims. Additionally, Plaintiff brings his constitutional claims against each of the individual Defendants in both their official and individual capacities. Official-capacity suits are "way of pleading an action against an entity of which an officer is an agent" and, therefore, "[s]uits against [an entity's] officials in their

official capacity . . . should be treated as suits against the [entity].” *Gibson v. City of Portland*, 165 F.4th 1265, 1275–76 (9th Cir. 2026) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). This section therefore addresses both the claims against King County and the claims against the individual defendants in their “official capacity.”

A local government or municipality can be sued as a “person” under Section 1983. *Monell*, 436 U.S. at 691. A governmental entity is not liable under Section 1983 merely as a matter of respondeat superior for constitutional injuries inflicted by its employees, *id.* at 694, but can be held liable (1) when official policies or established customs inflict a constitutional injury, (2) when omissions or failure to act amount to a local government policy of “deliberate indifference” to constitutional rights, or (3) when a local government official with final policymaking authority ratifies a subordinate’s unconstitutional conduct. *Brown v. Contra Costa County.*, No. C12-1923, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing *Plumeau v. Sch. Dist. #40 Cnty. Of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

Plaintiff does not specifically allege facts supporting the elements of *Monell* liability in the FAC, although there is language in the Complaint that at least points to a “ratification” theory of *Monell* liability, specifically that “Defendant held final policymaking authority and either implemented or ratified the discriminatory enforcement of the Mandate.” Dkt. No. 16 ¶ 102. In his opposition to the motion to dismiss, Plaintiff attempts to establish *Monell* liability in two ways. First, Plaintiff asserts that “the County’s custom and practice evidenced a policy of categorically excluding religious people from accommodations for the Mandate’s vaccine requirement.” Dkt. No. 25 at 27. Second, Plaintiff asserts that “County officials directed and ratified the actions of subordinates denying religious accommodation requests.” *Id.*

At this time, the Court need not consider these theories, because *Monell* liability is predicated on the existence of a constitutional (or federal statutory) violation. *See Scott v.*

*Heinrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("[M]unicipal defendants cannot be held liable because no constitutional violation occurred."); *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims . . . require a plaintiff to show an underlying constitutional violation."). Because Plaintiff has not stated a claim that his constitutional rights were violated, *see supra* Section IV.A.2, he has not alleged municipal liability under *Monell* for any violation of these rights.

Because the Court grants Plaintiff limited leave to amend his complaint, and because the Court's qualified immunity findings mean any amended Complaint will necessarily be limited to municipal-liability claims, the Court briefly addresses the specific deficiencies in Plaintiff's *Monell* allegations that will need to be remedied for any amended claim to survive.

**a. Monell Liability Under a Policy or Practice Theory**

"Absent a formal governmental policy"—which the FAC does not allege—Plaintiff "must show a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" *Trevino*, 99 F.3d at 918 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled' [municipal] policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691).

First, the facts pleaded in support of Plaintiff's "policy or practice" theory are insufficient to survive a motion to dismiss. Plaintiff's allegations resemble the "generalized allegations that . . . Defendants denied all religious accommodations and granted all medical allegations," that other courts have found (and this Court agrees) are "insufficient to sustain [a] *Monell* claim" when presented without "specific examples or some other form of supporting evidence[.]" *Mumin v. City of New York*, 760 F. Supp. 3d 28, 58–59 (S.D.N.Y. 2024) (citation modified). Like the plaintiff in *Mumin*, Plaintiff here has provided only his own experience, and his failure to

allege details about "the similarity and scope of denials for accommodations" prevents the Court from determining that the alleged practice was truly widespread and systemic. *Id.* at 59.

Even if Plaintiff is able to plead more specific facts, particularly as related to the use of mutual-aid personnel (which could bring his complaint in line with *Bacon III*), the requirement that he show a "*longstanding* practice or custom" presents an insurmountable obstacle. In another COVID-19 case, this one in Los Angeles, a district court found that "any unwritten policy concerning COVID-19 protocols could not have been 'so permanent' or 'well settled' that it amounted to an established custom." *Morris v. City of Los Angeles*, No. C22-9277, 2024 WL 4370817, at *3 (C.D. Cal. Oct. 1, 2024). Like the *Bennett* court, which "generally agree[d]" with the *Morris* court's proposition within a vaccine-mandate context, *see* 2026 WL 41131 at *4, the Court finds that Plaintiff has not adequately established a "permanent" or "well settled" custom with respect to Defendants' vaccine-accommodations practices, and doubts that he will be able to do so. *See id.* at *4. In his briefing, Plaintiff attempts to distinguish *Morris* by asserting that "*Morris* addressed a failure-to-train theory—one Carr does not assert—and ultimately held the plaintiff adequately pleaded a *Monell* claim." Dkt. No. 25 at 27 (citing *Morris*, 2024 WL 4370817, at *3). This argument is both incomplete and unavailing. The *Morris* court *did* address a failure to train theory (which it found unsupported by the complaint), but it also rejected a theory like the one Plaintiff advances here, finding that "Morris does not allege any 'unwritten policies,' nor could he." 2024 WL 4370817, at *3. The salient point that the *Morris* court made was that, "in 2020 and 2021, the COVID-19 pandemic was novel and quickly evolving," and the customs complained of could not have been well established. *Id.* That analysis applies here with equal force.[15] Given that the virus appeared on these shores only in 2020, *Rosa*, 2025 WL

---

[15] The one basis for *Monell* liability that *was* found to be adequately pleaded in *Morris* was one based on specific *written* policies. *Morris*, 2024 WL 4370817, at *3. No such allegation is present in the FAC.

2733672, at *1, *no* policies specific to the government's response to the pandemic could have been "well settled" by early 2022. This is even more applicable to vaccinations—and requirements that they be obtained—which came into existence even later. *See id.* at 2. However, the Court allows that Plaintiff may be able to amend these allegations if he identifies other, longer-standing policies that were the moving force behind the denial of his requested accommodations.

**b. Ratification**

In the Ninth Circuit, "a ratification theory of *Monell* liability requires 'a plaintiff to show that the authorized policymakers approve a subordinate's decision and the basis for it . . . . The policymaker must have knowledge of the constitutional violation and actually approve of it." *Perryman v. City of Pittsburg*, 545 F. Supp. 3d 796, 803 (N.D. Cal. 2021) (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)). A "mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

The Court agrees with Defendants that the FAC does not state a claim for *Monell* liability on a ratification theory, even if he could plead additional facts to remedy the deficiencies in his First Amendment claim. Defendants point out that a ratification theory of *Monell* requires a plaintiff to plead "factual allegations about the actions policymakers took to approve a subordinate's misconduct so as to support an inference of ratification." Dkt. No. 20 at 29 (citing *Nguyen v. County of Orange*, No. C22-1693, 2023 WL 4682301, at *3 (C.D. Cal. June 8, 2023)). But a ratification theory also requires a Plaintiff to plead constitutional violations *by subordinates*, and Plaintiff alleges constitutional violations only by the policymakers, not their subordinates (whoever they may be). The FAC describes *all* Defendants as having "final policymaking authority" (Dkt. No. 16 at 102), and Plaintiff's constitutional claims are all pleaded as challenging a *policy*, not the discrete denial of his accommodation. In his response brief,

Plaintiff relies on his allegations that "Defendants affirmatively instructed their subordinates that no religious accommodations were to be granted and subsequently allowed these very actions to proceed unchecked." Dkt. No. 25 at 28. But the authorities cited by Plaintiff himself confirm that allegations that superiors "instruct[ed]" employees to take actions that allegedly violate constitution rights are consistent with a policy-or-practice theory of *Monell* liability, not a ratification theory. *See Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (cited by Dkt. No. 25 at 28).[16] Where the policy itself is the moving force behind Plaintiff's alleged injury, and the alleged violation is a systemic disparity rather than the discrete denial of an accommodation request by one unnamed subordinate, a ratification theory is simply inapplicable. However, Plaintiff may be able to amend his "ratification" allegations by pleading specific facts about the actions taken by Defendants' subordinates as well as facts that show Defendants knew of and ratified these specific actions.

* * *

For the foregoing reasons, all Plaintiff's constitutional claims are dismissed. Plaintiff's Due Process claims are dismissed with prejudice. Plaintiff is granted limited leave to amend his as-applied Free Exercise claim and his Equal Protection *Monell* claims against Defendant King County and against Defendants Constantine, Johanknecht, and Cole-Tindall only in their official capacities. However, to the extent Plaintiff's claims are brought against Defendants Constantine, Johanknecht, and Cole-Tindall in their individual capacities, qualified immunity shields them from liability and the claims are dismissed with prejudice. As Plaintiff has already amended his complaint once, no other new claims may be added.

---

[16] The Court notes also that Plaintiff's reliance on *Jackson v. Barnes* as unqualified support for the proposition that "Instructing or encouraging employees to deny religious exemptions is a basis for *Monell* liability" (Dkt. No. 25 at 28) is inappropriate, as *Jackson*, a Fifth Amendment case, includes no reference to religious exemptions. *See generally* 749 F.3d 755.

**B. State-Law Claims**

"A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (quoting 28 U.S.C. § 1367(c)(3)). Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims brought under the Washington constitution, WLAD, and state civil-service-protection laws and therefore dismisses these claims without prejudice. If Plaintiff chooses to file an amended petition that includes his Free Exercise and Equal Protection claims, he may re-plead his state-law claims therein (and Defendants may again move to dismiss them, as appropriate).

## V. CONCLUSION

Accordingly, Defendants' Motion to Dismiss (Dkt. No. 20) is GRANTED. It is hereby ORDERED:

(1) Plaintiff's Free Exercise claim (the federal component of Count I) is DISMISSED WITH PREJUDICE as brought against Defendants Constantine, Johanknecht, and Cole-Tindall in their individual capacities, and is DISMISSED WITHOUT PREJUDICE as brought against Defendant King County and against Defendants Constantine, Johanknecht, and Cole-Tindall in their official capacities.

(2) Plaintiff's Equal Protection claim (Count II) is DISMISSED WITH PREJUDICE as brought against Defendants Constantine, Johanknecht, and Cole-Tindall in their individual capacities, and is DISMISSED WITHOUT PREJUDICE as brought against Defendant King County and against Defendants Constantine, Johanknecht, and Cole-Tindall in their official capacities.

(3) Plaintiff's Due Process claims (Count III) are DISMISSED WITH PREJUDICE as to all Defendants.

(4) Plaintiff's state-law claims (the Washington Constitution component of Count I and all of Counts IV and V) are DISMISSED WITHOUT PREJUDICE.

(5) If Plaintiff intends to file a second amended complaint, he SHALL do so no later than October 30, 2026. If a second amended complaint is not filed by that date, judgment will be entered in accordance with this order and this matter will be closed.

(6) The Court hereby VACATES the Initial Case deadlines (*see* Dkt. Nos. 15 (Order Setting Initial Case Deadlines); 39 (Stipulation Resetting Initial Deadlines)), to be reset, if appropriate, after an amended complaint is filed and any related motion to dismiss is resolved.

Dated this 30th day of September, 2026.

Tana Lin
United States District Judge